UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| KELLEY CALDWELL,<br><br>                Plaintiff,<br><br>   v.<br><br>CARLOS DEL TORO, Secretary of the Navy,<br><br>                Defendant. | CASE NO. 3:19-cv-06095-BHS<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, AND DECISION |

This matter comes before the Court on a bench trial on Plaintiff Kelley Caldwell's remaining retaliation claim against Defendant Carlos Del Toro.

**I. DECISION**

Plaintiff Kelley Caldwell brought a complaint against her employer through the Secretary of the United States Navy ("the Navy") which owns and operates the Puget Sound Naval Shipyard ("PSNS") claiming it discriminated against her in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("the Act"), and that it also retaliated against her because she requested a reasonable accommodation to mitigate her hearing loss. The Court dismissed the discrimination claim, granting the Navy's motion for summary

1  judgment;[1] the retaliation claim was tried to the court in a two-and-a-half-day trial. The
2  Court finds for the Defendant. Caldwell failed to meet her burden of proof that the Navy
3  took any adverse employment action because she engaged in conduct protected under the
4  Act.

5        The parties seem to have been two ships passing in the night in which the Navy
6  initially was mysteriously ineffective in providing noise-canceling earmuffs[2] that
7  Caldwell began requesting in January 2017.[3] Caldwell's request for these earmuffs was
8  based upon her need for hearing protection because she had already experienced hearing
9  loss in her right ear that was mitigated by her use of a hearing aid.[4] After months of
10 frustration, on August 8, 2017, Caldwell made a formal Request for Accommodation
11 ("Request") pursuant to the Act to address her disability. Inexplicably, after repeated
12 efforts to obtain earmuffs, Caldwell switched her navigational course and, as part of the
13 request, submitted a note to the Navy dated August 17, 2017 from her physician, Dr.
14 Preston Rice, stating: "The patient cannot easily work in the noisy work environment

---

[1] The Court dismissed Caldwell's failure to accommodate claim because she failed to timely exhaust her claim with the Equal Employment Opportunity Commission as required under the Act. *See* Dkt. 26 at 5–7.

[2] For clarity and consistency, the Court refers to the requested ear protection as "earmuffs." The parties and their witnesses sometimes referred to the earmuffs as "earphones," "active noise-canceling earmuffs," or "headphones" in briefing and during trial.

[3] A more detailed statement of facts is contained in the Court's Order on Summary Judgment, Dkt. 26 at 2–4. The Court includes in this Order those facts that are relevant to this decision.

[4] Using her own resources, Caldwell had obtained noise-*blocking* earmuffs. The noise-blocking earmuffs, however, were unsafe to use because they blocked all noise. She then learned she required noise-*canceling* earmuffs which were more expensive.

secondary to additional noise exposure and the inability to properly wear protection over her hearing aid. She states that she is being considered for an office job with less noise environment and I think that would be optimal." Trial Exhibit A-1.

Other than Caldwell receiving the suggestion from her direct supervisor, Duane Merriman, Caldwell did not explain why she gave up her request for the earmuffs. She instead embarked on a different voyage, seeking an accommodation from the Navy that would place her in a position that, as she said in her Request, would "limit amount of time spent in noisy location[s]." Trial Exhibit 14. She asked the Navy to "[d]etail [her] to [a] job that limits the time on the waterfront." *Id.* While the Request was pending, Merriman transferred her to a "refueling" position on the waterfront, which decreased, but did not eliminate, her exposure to industrial noise.

On October 24, 2017 the Navy denied the Request in the Notice of Inability to Accommodate in Position of Record, Option of Reassignment as an Accommodation ("Notice"). *See* Trial Exhibit 7. It cited Dr. Rice's note and stated that Caldwell's position as a Physical Science Technician ("PST")[5] required, as essential functions of the position, that Caldwell "work in an industrial environment" and "an environment that is subjected to industrial noise at any time."[6] *Id.*

---

[5] This position is also known as a Radiological Controls Technician ("RCT"), and the parties use both titles interchangeably. *See* Dkt. 14 at 3.

[6] Caldwell argued at trial that the Notice contained a false statement: "You [Caldwell] stated that based upon your medical condition, you are no longer able to perform the essential functions of your position as a Physical Science Technician (PST), and have requested reassignment." Cook acknowledged at trial that Caldwell did not make this statement. Even so, Caldwell did state in Trial Exhibit 14 (Request), a document she signed: "Hearing disability in right ear unable to go in industrial environment w/o ear muffs (sic)"; "Unable to hear most

Caldwell argued that the fact that she was given an assignment on the waterfront that entailed refueling submarines, an activity that was not in as noisy of an environment, was proof that she could be placed in areas on the waterfront and therefore continue to perform the essential functions of a PST. But refueling was not a permanent position and there was no other evidence that there existed other work on the waterfront that did not have offending industrial noise.

Caldwell signed the Notice and agreed to the option contained within it that she would "be considered for reassignment within the local community area for PSNS & [Intermediate Maintenance Facility ("IMF")] as a reasonable accommodation." Implicitly, she was abandoning her request for earmuffs and embracing a reassignment which would, if found, be consistent with Dr. Rice's note on job restriction.

From November 2017 to April 2018, while she was waiting for a permanent reassignment, Caldwell was employed in a temporary position as a member of the Survey Packaging Team, an administrative job in an office environment.

In March 2018, while working on the Survey Packaging Team, Caldwell became eligible for a promotion to a grade 7 position because she had reached her one-year anniversary of working in grade 6. Though eligible, she was not qualified for the

---

conversation (sic). Unable to hear phone ring. Very hard to hear in area's (sic) with high background noise. Unable to wear dr. (sic) prescribed hearing aid." And though Caldwell did not explicitly state that she could not perform the essential functions of the PST position, these statements of Caldwell's, Dr. Rice's note, and the testimony of the Navy's witnesses, made clear that she, in fact, was unable to perform the essential functions of the PST position because her disability precluded work assignments on the noisy waterfront.

ORDER - 4

promotion because she was not performing all the essential functions of her position as a PST.[7]

In April 2018, having earlier been enrolled in the Student Loan Repayment Program ("SLRP"), Caldwell requested from the Navy an annual payment toward her student loans. Administrative Officer Heather Parrish processed the request and, instead of approving or denying it, she "put it on hold." It was not approved because Caldwell was not, at the time of the application, performing all the essential functions of her position as a PST.[8]

On May 31, 2018, Caldwell, apparently giving up her request for reassignment, obtained from Dr. Oanh Troang a physician's note that removed any employment restrictions "as long as she is wearing active noise cancelation ear protection." Trial Exhibit 12. Caldwell submitted this to the Navy, requesting that she be returned to her position as a PST on the industrial waterfront.

A day later, on June 1, 2018, PSNS Occupational Audiologist Dr. Mark Miller, submitted to the Navy a recommendation that Caldwell be issued active noise-canceling earmuffs and further stating: "There are no limitations in her record showing that she

---

[7] Caldwell argued that only a PST could perform work on the Survey Packaging Team and that therefore Caldwell was performing all the essential functions of a PST. While this work required skills and knowledge of a PST, and Caldwell was holding a PST title at the time, she was not qualified for a time-in-grade promotion because she was not performing all the essential functions of a PST.

[8] Although Ms. Parrish testified that she did not "know" this to be a requirement, the Court accepts her testimony as accurate that she "believed" it was one, even though on cross-examination she stated that she was not "sure."

cannot work in hazardous noise environment and should not be limited to office work since she is qualified to continue her job out on the waterfront."[9] Trial Exhibit 13.

The Navy approved Caldwell's return to her PST position on the waterfront but, as a condition, requested that she withdraw her Request. Caldwell claims this is evidence of retaliation for her invoking the Act and requesting an accommodation.

The problem with this theory and her claim is that it was perfectly reasonable for the Navy, before allowing Caldwell to return to her PST position, to require that Caldwell agree that she no longer desired that the Navy assign her to a "job that limits time on [the] waterfront."[10] Trial Exhibit 14.

Keeping the Request open, in which she sought reassignment, would have been inconsistent with her subsequent request and return to her PST position. Susan Cook, the head of the Radiological Monitoring Division and Caldwell's supervisor, asked Caldwell to withdraw the Request because she wanted to be sure that Caldwell was "okay" with withdrawing the request.[11] The Navy's withdrawal request was not an adverse

---

[9] The Navy uses the form "Report of Work Limitation" when someone has work restrictions due to illness or disability. *See* Trial Exhibit A-4. This form was not used in connection with Caldwell's Request. Caldwell makes a confusing and unpersuasive argument that in some way this oversight is proof of pretext.

[10] Caldwell gave the answer, "Correct," to the question from the Navy's counsel: "Nothing unreasonable about requiring you to do so? You weren't looking for another job, you had the accommodation you wanted and you were going back to the waterfront, right?" Trial Transcript at 49.

[11] "Q [Mr. Johnson]: Why was it important to you that Ms. Caldwell withdraw her reason (sic) reasonable accommodation request before you promoted her?
A [Ms. Cook]: I wanted to make sure she was okay with it. She had requested a certain thing based on her illness – I'm not her. Is she okay with do (sic) this and let's get her back to

employment action and was not made because of Caldwell's conduct protected under the Act.

      Caldwell also offered the theory, though not well-developed, that she experienced an adverse employment action when she was temporarily assigned to the to the Survey Packaging Team and paid less than other PSTs performing the same work. Additionally, Caldwell supports her argument by arguing that she was denied a promotion in grade and pay in February 2018 because she was in her current grade as a PST for one year. This theory also fails because the Navy's witnesses Ramon Gonzales and Susan Cook testified that the other PSTs were still performing all the essential functions of the PST position that included responsibility "to respond to waterfront casualties and also to work weekends based on workload"—something Caldwell could not do because of her disability. In February 2018 Caldwell was not performing all the essential functions of the position of PST and therefore, not in that position when one year had passed (although she retained the PST title), rendering her ineligible for promotion to the next grade. The fact that only PSTs could work on the Survey Packaging Team does not mean that Caldwell was performing all the essential functions of that position.[12]

---

her work. I would absolutely expect her to say, yes, I am okay. Remove me." Trial Transcript at 110:9–16.

[12] While the Navy was, as argued by Caldwell, unable to point to a specific regulation, rule, policy, guide, or direction that required Caldwell to be performing all the necessary functions of the PST position to qualify for her promotion and to participate in the SLRP, the Court accepts as accurate the testimony of witnesses Harper and Parrish.

On July 22, 2018, Caldwell was re-assigned to her PST position on the noisy waterfront and approved for promotion to Grade 7, and was also approved for the $3000.00 payment toward her student loans.

Caldwell argued that by July 2018, she had not been working in-grade for one year according to the Navy, proving that the Navy qualified her by implicitly acknowledging that during the time she was serving outside the waterfront, in fact, she was performing all the duties of a PST. But Cook testified that in order to receive a promotion there is a two-step process. First, one must demonstrate eligibility for the promotion by holding the PST position for one year. Caldwell satisfied that requirement. But to ultimately qualify, the employee must also satisfy the second step of performing all the essential functions of her position at the time of her review. Caldwell met the eligibility requirement in February 2018, but did not qualify until she was performing all the essential functions of her position in July 2018 when her promotion was approved.

None of the Navy's actions constituted an adverse employment action caused by Caldwell engaging in protected activity. Nor were they the result of any retaliatory motive. The but-for cause of its actions was Caldwell's disability that led to an accommodation process that was fairly administered and ultimately resulted in Caldwell obtaining her promotion and qualifying for the SLRP.

This has been a story of misunderstanding, or perhaps simply confusion. The Navy's delay in providing Caldwell what she initially wanted, noise-canceling earmuffs, led an exasperated employee to begin the process of seeking accommodation; one that would allow her to retain her title as a PST and continue on the same time-in-grade

promotion track. This was denied, and Caldwell requested a reassignment. It is unclear whether Dr. Rice's note reflected what Caldwell really wanted. But it set in motion a process that Caldwell initiated and agreed to; one that resulted in a search for a new position as a PST, or a comparable position in pay grade. It was only after months of her being placed in a temporary position that she returned to the idea of working on the waterfront with proper ear protection. This idea bore fruit; after getting a new doctor's note, she obtained the right to work on the waterfront while wearing a pair of noise-canceling earmuffs, the very thing she sought out a year-and-a-half before. Perhaps if the Navy had more effectively engaged in its responsibility to participate in an interactive process as required by the Act, the confusion or misunderstanding could have been cleared up much earlier. Although the Navy prevails here, both parties could have done more to bring this voyage to a much earlier and more satisfactory end than leaving it to languish in court before the dispute finally steamed into port.

In addition to the foregoing, the Court makes the following findings of fact and conclusions of law.

## II.   FINDINGS OF FACT

1. PSNS in Bremerton, Washington provides maintenance, modernization, recycling, and other services for the Navy's fleet, much of which uses nuclear power. Both civilian Navy employees and active-duty military work at PSNS. Employees are organized into "codes" and "shops" by areas of responsibility. Employees assigned to Code 105 are part of a team of employees that monitors and helps control and supervise

the use of radiological or nuclear material. Plaintiff Kelley Caldwell was assigned to Code 105, Radiological Monitoring Division.

2. The Navy hired Caldwell on July 27, 2015 as a PST to work at PSNS.

3. PST is also known as RCT, and the parties use the titles interchangeably.[13]

4. As confirmed by Sue Cook, Radiological Monitoring Division Head, and Resource Manager Amber Harper, both of whom had previously worked as PSTs during their careers with PSNS, Caldwell's job as a PST had been to monitor for radioactivity associated with PSNS work. Her position required her to work on aircraft carriers and submarines and "on the waterfront" in areas near nuclear powered ships and material that may have been exposed to radioactivity.

5. Cook and Harper testified that the essential functions of a PST are to perform radiological evaluations of various worksites, including industrial areas and areas aboard ships; checking various shipyard areas for radiological control problems; and participating in all phases of radiation-related emergencies or incidents. PSTs can be exposed to significant industrial noise. The essential functions of the PST position require exposure to excessive industrial noise. *See* Trial Exhibits 5, 7.

6. Due to her hearing disabilities and inability to work in a noisy environment, Caldwell submitted a Request dated August 8, 2017, after being advised that she should do so. *See* Trial Exhibit 14. Caldwell met with Navy Reasonable Accommodation

---

[13] While the two are interchangeable in the Radiological Monitoring Division, there are other PST positions within PSNS and IMF, other than the RCTs who serve on the noisy waterfront, to which Caldwell might have been transferred if an opportunity existed.

Specialist Tahnee Orcutt to discuss and prepare her Request. In her Request, which she read and signed, she stated that she could not work in areas with high background noise and wanted to be "detailed to a job that limits time on the waterfront." As part of her Request, Caldwell submitted a note from her doctor, Dr. Preston Rice, dated August 17, 2017 ("August 2017 Note"), in which he advised and warned that Caldwell "should not be around any excessive industrial noise which could potentially worsen her sensorineural thresholds." He stated that Caldwell could not properly wear protection over her hearing aid and that working in an "office job" with less environmental noise "would be optimal" for her. *See* Trial Exhibit A-1.

7. While her Request was being considered by the Navy and was pending, Caldwell's supervisor at the time, Duane Merriman, informally transferred her to a "refueling" position on the waterfront in an effort to address her difficulties with industrial noise. While this transfer did alleviate somewhat the level of industrial noise to which Caldwell was exposed, the potential for exposure to industrial noise was still inconsistent with what Caldwell's doctor had indicated in his August 2017 Note. There is no evidence that Caldwell ever showed that August 2017 Note to Merriman. There is also no evidence that "refueling" was anything other than a temporary position.

8. Caldwell received the Navy's formal response ("Notice") to her Request, dated October 23, 2017, advising her that the Navy was unable to accommodate her by retaining her in her current position as a PST. *See* Trial Exhibit 7. In the Notice, which Caldwell read and signed, the Navy also advised that Caldwell was eligible to be considered for reassignment into a vacant position within the Navy. The Notice further

advised that management had determined that Caldwell could be temporarily gainfully employed on certain projects away from industrial noise, until they were completed. Caldwell chose and signed the option of reassignment as a reasonable accommodation on October 24, 2017.

9. As set forth in the Notice, signed by Cook, the Navy told Caldwell that it was unable to accommodate her by retaining her in her current position as a PST. "Your position of record requires you to work in an industrial environment. This position is responsible for radiological on the job coverage of all navy (sic) nuclear propulsion work . . . . A majority of . . . Code 105.3 work is in an environment subject to industrial noise at any time."

10. Pursuant to the Notice that she signed, Caldwell began the job search for vacant positions within the Navy. Over the course of the following months, consistent with her agreement to do so, Caldwell applied for and considered other job opportunities within the Navy. Caldwell refused one position because it did not involve a promotion. Parrish, Orcutt, and Caldwell interacted with Navy HR personnel and, on at least one occasion, Caldwell interacted directly with Parrish, as Caldwell sought "reassignment into a vacant position within the Navy."

11. Thereafter, the Navy assigned Caldwell to a temporary project. From November 2017 through April 2018, Caldwell performed "survey packaging" and other paperwork/administrative functions. She stayed in the office. She did not work at the "waterfront" or in a work environment with industrial noise. Her job was to review radiological legal documentation signed and submitted by other personnel. Caldwell

worked with a group of PSTs performing similar duties who were in a "work lull." These PSTs had completed radiological work on an aircraft carrier project and were waiting for the next radiological controls project. They were not performing these survey packaging functions on a permanent basis. These PSTs also were required when directed to work weekend overtime during this same period, which required them to work at the waterfront and perform the full spectrum of radiological testing, monitoring, and measuring duties. While during this period Caldwell worked overtime in the office performing administrative tasks, she could not work at the waterfront performing all the essential functions of a PST due to her doctor's instructions as set forth in the August 2017 Note.

12. The Navy transferred Caldwell to "survey packaging" tasks under the direct supervision of Ramon Gonzales pursuant to the Notice, which advised her that during her job search the Navy would keep her temporarily employed on certain projects away from industrial noise. Caldwell was not required to work in a noisy industrial environment or work on the waterfront, on or around submarines or aircraft carriers.

13. Cook, Parrish, and Harper were aware at the time that Caldwell was performing only survey packaging tasks. Based upon their work experience and their assessment of the PST position, they knew and believed that Caldwell was not performing all the essential functions of a PST during this time because of the limitations set forth in Caldwell's doctor's August 2017 Note.

14. Caldwell contends that she was entitled to a "career ladder" promotion from GS-6 to GS-7 in March 2018. As the parties stipulated, at that time Caldwell was performing survey packaging duties she had been performing since November 2017.

15. As testified credibly by Cook, Parrish, and Harper, to receive a career ladder promotion, an employee must not only have the requisite one year "time-in-grade," which Caldwell did have (one year in GS-6), but the employee must also be performing all the essential functions of her position. An employee is eligible for a career ladder promotion if she has one year time-in-grade. An employee is then qualified for a career ladder promotion if she also is performing all the essential functions of the position.

16. Cook determined that, as of early 2018, Caldwell was not qualified for the career ladder promotion. Cook denied the promotion because Cook determined that Caldwell was not performing all the essential functions of a PST while performing only survey packaging tasks. It was Cook's responsibility to determine whether employees within her chain were eligible and qualified for career ladder promotions. She employed the same analysis with each candidate for a career ladder promotion: approve the promotion if the candidate was eligible (one year in time-in-grade) and was also qualified (performing all the essential functions of the position). Cook performed that same analysis with Caldwell. Cook confirmed that the one-year requirement was applicable only to the time-in-grade component.

17. Cook has approved career ladder promotions for employees who have made reasonable accommodation requests or who are working with accommodations, applying the same analysis and evaluation.

18. There is no evidence that Cook had approved career ladder promotions for employees who did not have one year in time-in-grade or were not performing the essential functions of their positions.

19. Parrish notified Caldwell in March 2018 that she would not be promoted.

20. Caldwell applied for tuition repayment under the SLRP in April 2018.

21. The SLRP repayment is offered by the Navy as a retention incentive to eligible, qualified Navy employees in certain "critical occupational fields." It is not a benefit. Participants receive a set amount each year pursuant to the terms and conditions of the SLRP. To qualify for the program, an applicant must work in a "critical occupational field." The PST position is considered in a "critical occupational field." *See* Trial Exhibit A-8.

22. In addition, Parrish stated that it was her understanding that an applicant must be performing the essential functions of the position to qualify for participation in the SLRP, and that Caldwell was not fulfilling all the essential functions of a PST in April 2018 while performing only survey packaging tasks.

23. Parrish understood that Caldwell was looking for other positions as part of the job search she was undertaking. *See* Trial Exhibit 7. Parrish concluded that this meant that Caldwell "imminently" faced the possibility of moving to a position not in a critical occupational field, rendering her unqualified for participation in the SLRP. Thus, Parrish did not initially approve Caldwell's application.

24. There was no evidence that other employees were approved for participation in the SLRP without meeting all the criteria and qualifications or that

employees who were not in critical occupational fields or who were not performing all the essential functions of their positions were approved for participation in the SLRP.

25. In early June 2018 Caldwell provided the Navy with a note from a different doctor, Oanh Truong, advising that Caldwell was released to work without restrictions as long as she was wearing active noise cancelation ear protection. Trial Exhibit 12.

26. PSNS audiologist Mark Miller subsequently evaluated Caldwell, and in a note dated June 1, 2018, advised that with "active noise earmuffs" Caldwell could "continue her job out on the waterfront." *See* Trial Exhibit 13. (Caldwell had been previously provided with ear protection by the Navy outside the reasonable accommodation process.)

27. Following her presentation of updated medical information regarding her hearing and her return from surgery, *see* Trial Exhibit A-4, Caldwell gave notice that she was "withdrawing from the reasonable accommodation and job search process as of June 12, 2018," *see* Trial Exhibit 14. Caldwell did not testify that she felt compelled or coerced to withdraw from the reasonable accommodation and job search process. Caldwell confirmed that she did not want to continue to participate in the job search process and apply for any other positions since she could return to the waterfront and resume prior duties. She did not want or need any additional accommodations.

28. In response, Cook credibly testified that it was important to work with Caldwell to see if she needed or wanted any other accommodations before returning her to the waterfront. Caldwell did not want any other accommodation.

1  29. Caldwell returned to the waterfront and began performing all the essential duties of a PST later in June 2018.

30. Because Caldwell was back at the waterfront and performing all the essential functions of her position as a PST, she was qualified for the career ladder promotion. Cook approved Caldwell's promotion on approximately July 11, 2018, which was processed with an effective date of July 22, 2018. *See* Trial Exhibits 16, 17.

31. Parrish approved Caldwell's SLRP application because Caldwell was no longer searching for another position and was returning to all essential duties as a PST. *See* Trial Exhibit 19 at 338. Caldwell's application was approved on approximately July 11, 2018, with an effective date of July 22, 2018. *See* Trial Exhibit A-5. Caldwell received the first payment in August 2018, and Caldwell received full payment, $3000, for all amounts due for 2018. The Navy's alleged delay in approving Caldwell's SLRP application did not cause her to incur any financial or economic loss.

34. The Navy approved Caldwell's application for the SLRP in July 2018, and she received full payment of $3000 for 2018.

### III. CONCLUSIONS OF LAW

1. Plaintiff Kelley Caldwell brought a claim for retaliation pursuant to the Act. By Order dated December 13, 2021, the Court granted the Navy's motion for summary judgment as to Caldwell's claim for failure to accommodate. The Court dismissed the failure to accommodate claim with prejudice. *See* Dkt. 26.

2. Jurisdiction in this matter is proper under 28 U.S.C. § 1331.

1       3.      The Defendant, Carlos Del Toro, is the Secretary of the Department of the

2 Navy. The Navy is an agency of the Department of Defense. In a case of alleged

3 workplace discrimination or retaliation involving a Navy employee, the law requires that

4 the plaintiff name the Secretary of the Navy as the defendant.

5       4.      The Act prohibits retaliation against an employee who has engaged in

6 protected activity. *See, e.g.*, *Coons v. Sec'y of the U.S. Dep't of the Treasury*, 383 F.3d

7 879, 887 (9th Cir. 2004); *Brown v. Potter*, 457 F. App'x 668, 671 (9th Cir. Nov. 3, 2011);

8 *Straws v. Del Toro*, C19-6178 BHS, 2021 WL 4989831, at *7 (W.D. Wash. Oct. 27,

9 2021). Retaliation is defined as discriminating against an employee because the employee

10 has engaged in protected activity, including requesting a reasonable accommodation. *See,*

11 *e.g.*, *Coons*, 383 F.3d at 887 ("The plaintiff must present evidence adequate to create an

12 inference that an employment decision was *based on* an illegal discriminatory criterion.")

13 (internal quotation omitted); *Anders v. Braithwaite*, C19-5433-BHS-TLF, 2021 WL

14 5890852, at *5 (W.D. Wash. Sep. 20, 2021) (citing *Coons*, 383 F.3d at 887), *R&R*

15 *adopted by* C19-5433 DGE, 2022 WL 268853 (W.D. Wash. Jan. 28, 2022); *see also*

16 *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338 (2013) (unlawful to discriminate

17 based upon participation in protected activities, applying "but for" causation test to

18 retaliation claim).

19       5.      First, Caldwell fails to meet her burden of proof that the Navy retaliated

20 against her because she made a request for a reasonable accommodation when she was

21 not initially approved for a career ladder promotion in approximately February or March,

22 2018.

1        6.      There was no evidence of the requisite discriminatory treatment: that she was treated differently than other employees, particularly employees who had not engaged in protected activity, including making a request for an accommodation. Caldwell's failure is fatal to her claim. *See, e.g.*, *Coons*, 383 F.3d at 887 (the plaintiff must show that an employment decision was based on "an illegal discriminatory criterion") (internal quotation omitted).

      7.      Second, Caldwell has failed to meet her burden of proof that the Navy retaliated against her when the Navy did not initially approve her application for payment in the SLRP.

      8.      Caldwell did not suffer an "adverse employment action" regarding her delayed loan repayment or suffer economic loss. The initial decision "to put on hold" her application did not have any adverse impact on the terms of her employment and therefore Caldwell has failed to establish an essential element of her retaliation claim. *See, e.g.*, *Straws*, 2021 WL 4989831, at *7–8 (holding there was no "adverse employment action" for Rehabilitation Act retaliation claim where the adverse action did not materially affect a term of the plaintiff's employment).

      9.      Caldwell produced no evidence that other employees who were not performing all the essential functions of their positions were approved for SLRP loan repayment.

      20.      Caldwell did not meet her burden of proof that the Navy retaliated against her for engaging in protected activity pursuant to the Act. The Navy did not retaliate

against Caldwell when initially denying her career ladder promotion and initially not approving her application for repayment under the SLRP.

21. The Court finds in favor of Defendant and enters judgment in favor of Carlos Del Toro, Secretary of the Navy.

IT IS SO ORDERED.

The Clerk shall enter a JUDGMENT and close the case.

Dated this 22nd day of July, 2022.

*[signature]*

BENJAMIN H. SETTLE
United States District Judge